LUIS RAÚL RODRÍGUEZ, Plaintiff and Appellee, *v.* NELSON WARD, Defendant and Appellant.

No. 10298.   Argued February 9, 1951.—Decided May 14, 1953.

*Diego O. Marrero* and *Federico Valladares* for appellant. *Eduardo Urrutia Martorell* for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

Luis Raúl Rodríguez, an architect, brought the present suit against Nelson Ward in the former District Court of San Juan to recover from the latter the unpaid claim of $1,127.50 for professional services.   Plaintiff alleged, in

brief, that about February 1947, and at defendant's request, he studied and prepared for the latter drawings for the erection of a one-story house and basement, to be built on a lot belonging to said defendant in the "Urbanización Religiosa del Sagrado Corazón," of Santurce, and that defendant, despite his request, has refused to pay him the fees for his work, which amounted to the above-mentioned sum. Defendant admitted some of the facts, but substantially denied plaintiff's claim, alleging, on the other hand, that the plans prepared by the latter are worthless because they did not conform to his instructions and that by refusing to adjust the same to the cost of $12,000 or $13,000 previously fixed as the maximum for the cost of the construction, plaintiff, through his own fault, made it impossible for defendant to use those plans, thereby relieving defendant from the obligation of paying him for his work.

After a trial on the merits the court *a quo* sustained the complaint and ordered defendant to pay the plaintiff the amount of $1,040.23 plus interest, costs and $200 for attorney's fees.

Feeling aggrieved, defendant filed the present appeal, and in his lengthy brief in support thereof he contends that the court *a quo* erred (1) in not finding that plaintiff did not prove the existence of a contract of lease of services at a certain and fixed price; (2) in finding that there existed a service contract between plaintiff and defendant, by virtue of which the latter bound himself to pay to the former the amount of $1,040.23, which sum the court fixed arbitrarily, without proof therefor; (3) in disregarding the defense raised by defendant that plaintiff lost his right to recover by failing to follow defendant's instructions to the effect that the cost of the building, the plans of which had been entrusted to him, should not exceed $12,000 to $13,000; (4) in not finding that defendant was bound to pay to plaintiff only 3% of the cost of the project so long as the cost did not

exceed $12,000 to $13,000; and (5) in rendering judgment against defendant and ordering him to pay attorney's fees.

■ We shall first make a brief summary of the evidence introduced before the trial court.

### EVIDENCE FOR THE PLAINTIFF

Plaintiff's evidence was to the effect that Nelson Ward, owner of a lot in the "Urbanización Religiosa del Sagrado Corazón," of Santurce, secured his professional services for the preparation of some preliminary drawing and plans for his residence to be built on said lot. According to a sketch prepared by the defendant, to which plaintiff's plans had to conform, the house was a one-story building, with four bedrooms, living room, dining room, office, and two bathrooms. Before making the plans, plaintiff Rodríguez went with defendant to examine the lot and upon asking the engineer in charge of the development if the street laid out in front of said lot would be on the same level with the lot, said engineer answered affirmatively. Plaintiff prepared a preliminary drawing which defendant liked, with the exception of the finish, which his wife wanted in a Spanish style. Although plaintiff estimated that said construction would cost from $12,000 to $15,000, defendant told him that it would cost him less because he was an employee of the Ready Mix Concrete, Inc., and could get the reinforced concrete at list price and also the wood forms and other implements at no cost.

When plaintiff was ready to prepare the final drawings, Ward called him and told him to stop the preparation of said drawings because the street, which was already laid out, was above the level of the lot. He told him to prepare new plans for a house with the same facilities as the former, but built on columns, taking advantage of the space underneath for the garage and the service quarters. He gave him a second sketch in order that plaintiff would adapt the new plans to it. According to said sketch, besides the main floor

which would have the same facilities previously agreed—with the exception of the office—there would be a basement with a garage, service quarters, office and other facilities. Rodríguez told Ward that the new house would cost him more than the price originally stated, that its cost would amount to about $22,000 and that even if defendant had the facilities which he alleged, it could not be built for less than $17,000. Ward told him not to worry and to proceed with the plans.

Plaintiff used the services of two expert engineers in the technical phases of the plans, paying $120 to José Serrano Anglada, architect, for the structural plans and $85 to the engineer Alberto Vázquez Robles for the plan of the electric installations.

The final plans were delivered to the defendant. Subsequently, defendant again went to plaintiff for his signature on some specifications which the former would submit, together with a petition for a construction permit, to the Bureau of Permits. At first, plaintiff refused to sign the specifications because he had not made them, but after examining them and determining that they were correct, he signed them. Together with plans and the specifications, defendant submitted to the Bureau of Permits an estimate of about $10,000 as the cost of the project. Said Bureau informed him, however, that the cost of the construction was estimated worth more than $20,000. Defendant insisted in a reduction of said estimate, sustaining that due to his peculiar situation the cost would be much less than the one computed by that office. Upon the Bureau of Permits insisting in its appraisal, defendant withdrew the plans, stating that in that case he would rather not go on with the project.

Plaintiff demanded his fees from defendant, but the latter refused to pay him alleging that the Bureau of Permits had informed him that those plans were useless because they did not fulfill the minimum requirements demanded. Plaintiff went to the Bureau where he was informed that the plans were acceptable, but that the cost submitted by defendant

was considerably lower than the one computed by that agency, for which reason the construction permit could not be granted until said cost was amended.

EVIDENCE FOR THE DEFENDANT

Defendant's evidence tended to show that about February 1947 and by suggestions of Francisco M. Rexach, an engineer, he exchanged views with plaintiff, who at the time worked with Schimelpfenning, Ruiz & González, and entrusted plaintiff with the drafting of a preliminary drawing and some plans for the construction of a one-story reinforced concrete house, with four bedrooms, living room, dining room, kitchen, a main bathroom and another bathroom and a garage with service quarters annexed to it, to be built on a lot belonging to plaintiff in the "Urbanización Religiosa del Sagrado Corazón." He told plaintiff that he did not want the total cost of construction of said house to exceed $12,000 or $13,000. It was agreed that plaintiff would prepare the preliminary drawing and the plans and that the defendant would prepare the specifications under the advice of the engineer Francisco M. Rexach. It was agreed that the fees would not exceed $400 for the preparation of the preliminary drawing and the plans, defendant binding himself to take all the steps necessary for the approval thereof.

Two months later when plaintiff gave defendant the preliminary drawing and the plans, defendant noticed that according to the drawings the house would be at a lower level than the street because plaintiff had not had in mind the position of the lot when he prepared them. In view of that, plaintiff suggested that defendant could make use of the difference of elevation to build a basement, the main story to be used as dwelling while the garage and service quarter would be installed in said basement. Defendant agreed so long as the total cost would not exceed the amount of $12,000 to $13,000 already stated. Plaintiff assured him that said changes could be made to conform the plans to the

lot and within the afore-mentioned cost. When defendant received the modified plans he submitted them to the Bureau of Permits for approval where he was informed by an official that said office considered that the cost of the project exceeded $25,000. Since said appraisal doubled the cost which he had indicated, defendant withdrew the petition for a construction and asked plaintiff to reduce the plans to the cost which had been stipulated. Plaintiff refused to do so, sending him a bill for the amount of $745.60.[1]

Said evidence was obviously contradictory and it was incumbent on the trial court to settle the conflict. If in doing so, it favored plaintiff, we shall not interfere on appeal with its findings of fact—which are supported by the evidence which the court had before it—and in the weighing of which we do not believe it committed manifest error. Consequently, we dismiss the third and fourth assignments as well as the first part of the fifth assignment which are directed, one way or the other, to challenge the weighing of the evidence.

■■ In the first and second assignments the lower court is charged with having erred in failing to find that the plaintiff "did not prove the existence of a contract of lease of services at a certain and fixed price" and in having concluded

---

[1] Plaintiff's documentary evidence consisted of two cards acknowledging him as a member of the Engineers' Association during the years 1947 and 1948, the two sketches made by the defendant; a preliminary project for a one-story building with an outbuilding consisting of a garage and service room, dated February 26, 1947; final plans of the "residence for Mr. and Mrs. Nelson E. Ward"; copies of letters between plaintiff and the Bureau of Permits; policy No. 21686 issued by the State Insurance Fund in favor of Nelson E. Ward dated March 6, 1947.

Defendant's documentary evidence consisted of a document entitled "Technical Specifications and Contract for the Construction of the residence of Mr. Nelson E. Ward, at lot No. 13, 'Urbanización Religiosa del Sagrado Corazón,' Stop 26, Santurce," filed by plaintiff; a petition for a permit to construct in the name of defendant and signed by Francisco M. Rexach; document entitled "Cost of construction of the residence of Mr. Nelson E. Ward, to be built at lot No. 11,118, Santurce, North, 'Urbanización Religiosa del Sagrado Corazón,' Stop 26, Santurce," which is signed by Francisco M. Rexach, and a bill sent by plaintiff to defendant dated April 20, 1947, for the amount of $745.60.

"that there existed a contract of services between plaintiff and defendant, by virtue of which defendant bound himself to pay to plaintiff" the amount of $1,040.23, "which amount the court fixed arbitrarily and without proof." Upon arguing said errors appellant contends that plaintiff's evidence did not show the existence of a contract of professional services at a certain and fixed price as demanded by the law and the jurisprudence; that said evidence only showed that there was "a contract between plaintiff and defendant for professional services to be rendered by plaintiff on the condition that the project would not exceed $12,000 to $13,000 and plaintiff would receive 3 per cent of said sum as fees for his services."

Although the lower court did not make a specific finding to the effect that plaintiff's evidence did not show the existence of a contract at a certain price, the same may be inferred from the context of its opinion. It deemed proved that defendant "entrusted plaintiff with the preparation of a plan for the construction of a house which would be built on a lot belonging to defendant" and its conclusion regarding plaintiff's fees was as follows:

"Plaintiff accounted for his fees as follows: $540.60 for the original preliminary drawing as well as for the final plans, all of it, according to the tariff of the Engineers and Architects' Association of Puerto Rico; $205 for partial payments made to other engineers for the drawing of complementary plans; $279.63 equivalent to fifty-five (55%) per cent of five (5%) per cent of $22,370 for the specifications examined by plaintiff and on which he affixed his signature being responsible thereof and $15, the cost of the extra copy which he sent, according to the requirements, to the office of the Bureau of Permits."

It is an inescapable conclusion that the judge regarded the contract between the parties as one in which no certain price had been fixed and hence, taking as a basis what plaintiff "evidenced," the court fixed the fees. The fact that a certain price was not agreed upon does not have, however, the effect that appellant pretends to give it. In a contract

like the one herein, the law does not require that a certain price be agreed upon. The requirement of a certain price established by § 1434 of the Civil Code, 1930 ed.[2] does not apply in connection with contracts for professional services. In this aspect said contract is specifically regulated by § 1473 which in its pertinent part establishes that: "Professional services, as regards the remuneration therefor, shall be subject to the agreement of the parties; *and where there is no agreement as to remuneration, and a disagreement should arise respecting the same, the party entitled to such remuneration may sue and recover from the adverse party the reasonable value of such services in any court of competent jurisdiction.*"[3] (Italics ours.) See *Sweet* v. *Zalduondo,* 26 P.R.R. 307; *Ex parte del Moral,* 43 P.R.R. 696, 697; *Gandía* v. *Pérez Moris,* 15 P.R.R. 337.

██ Nor do we agree with appellant in his contention that the sum of $1,040.23 granted to plaintiff as fees was fixed "arbitrarily and without proof."[4] On that score plaintiff testified that he originally sent defendant a bill for $745.60, which sum represented his fees for the drafting of the preliminary and final plans. The cost of his work in the preliminary drawing was computed on the basis of one per cent

---

[2] Said Section provides:

"Section 1434.—In a lease of works or services, one of the parties binds himself to execute a work or to render a service to the other for a specified price."

Even in cases under this Section—the one at bar is not—the Supreme Court of Spain has recognized the validity of certain contracts in which there was no certain price previously stipulated. See Judgments of November 10, 1944, 8 *Jur. Civ.,* second part, 358 and of January 25, 1910, 113 *Jur. Civ.* 296; *Cf.* Judgment of March 3, 1926; 170 *Jur. Civ.* 27 and Judgment of October 18, 1899, 88 *Jur. Civ.* 105.

[3] This part of said § 1473 has no precedent in the Spanish Civil Code since it was introduced by virtue of the Act of February 24, 1906, Session Laws, p. 35.

[4] We do not find it necessary to discuss appellant's additional argument to the effect that he was only bound to pay plaintiff 3 per cent of the cost of the project, since, as we indicated in disposing of the third and fourth assignments of error and in the first part of the fifth, the court *a quo* settled the conflict against him.

(1%) of the original cost estimated for the project, that is $13,000, this item being $130. He calculated the value of the final plans on the basis of 55 per cent of 5 per cent of $22,370, which was the cost of the project according to said final plans. This amounted to $615. After having sent the aforesaid bill to defendant, the latter went to him again so that he would authorize the specification, for which work he charged him $279.63, which sum is somewhat less than 5 per cent "of the total tariff of the complete project," which is what is usually charged. For additional copies of the plans to submit them to the Bureau of Permits, and other expenses, he charged the amount of $109.65.

Based on this evidence the court *a quo* fixed the amount of his services in the sum of $1,040.23. Said evidence, which was believed by said court, is sufficient to support its findings to that respect, without this Court being in a position to state that the amount thus fixed, of the services rendered by plaintiff, is unreasonable.

Appellant's objection to the attorney's fees, found in the second part of his first assignment of error, is without merit. Although the trial judge made no finding of fact to the effect that defendant was obstinate, it is evident that he considered him so, inasmuch as he granted plaintiff $200 for attorney's fees. *Font* v. *Pastrana*, 73 P.R.R. 238. And as to the sum granted, we see no reason for disturbing it.

The judgment will be affirmed.